STATE OF NORTH CAROLINA v. TONY LEE WEAKLEY

No. COA05-863

(Filed 21 March 2006)

## 1. Search and Seizure— motion to suppress evidence—probable cause—plain view exception

The trial court did not err in a possession of stolen property, possession of a stolen firearm, possession of Valium, possession of marijuana, possession of drug paraphernalia, and possession of methamphetamine case by denying defendant's

motion to suppress items found pursuant to the search of his residence, because: (1) a detective was lawfully inside defendant's premises to monitor the movements of a suspect who needed to return inside the house to get fully dressed when she observed a shower curtain belonging to a larceny victim; (2) the discovery of the shower curtain was inadvertent when it just caught the detective's eye in one of the bedroom windows, and there was no evidence the officer was looking for the shower curtain; (3) it was immediately apparent to the detective that the shower curtain constituted evidence of a crime when the curtain matched pictures she had seen provided by the victims of items taken from their bathroom with a border in the bathroom matching the curtain; and (4) based on the detective's observation of the shower curtain, she had probable cause to believe defendant's residence contained stolen items entitling her to get a search warrant.

## 2. Constitutional Law— right against self-incrimination—no standing to assert rights of third party

Although defendant contends the trial court committed plain error in a prosecution for possession of stolen property and other crimes by allowing the State to cross-examine defendant's girlfriend regarding her failure to give a statement to a detective, this assignment of error is dismissed because defendant does not have standing to assert the constitutional right against self-incrimination of a third party.

## 3. Possession of Stolen Property— motion to dismiss—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of possession of stolen property under N.C.G.S. § 14-71.1, because: (1) the evidence tended to show that stolen goods were found throughout defendant's residence; and (2) the circumstantial evidence tended to show defendant knew or should have known the goods his girlfriend brought into his residence were stolen.

## 4. Firearms and Other Weapons— possession of stolen firearm—motion to dismiss—sufficiency of evidence

The trial court erred by denying defendant's motion to dismiss the charge of possession of a stolen firearm under N.C.G.S. § 14-71.1, and this conviction is reversed, because: (1) the State presented no evidence that the firearms were stolen pursuant to

a breaking or entering or that defendant knew or should have known the firearms were stolen; (2) the trial court dismissed defendant's charges of breaking and entering and larceny after breaking and entering; and (3) the State presented no evidence of when the firearms were stolen or how long they had been in defendant's possession.

**5. Drugs— possession of Valium—possession of marijuana— possession of drug paraphernalia—possession of methamphetamine—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charges of possession of Valium, possession of marijuana, possession of drug paraphernalia, and possession of methamphetamine, because: (1) an accused has possession of contraband when he has both the power and the intent to control its disposition or use; (2) defendant leased and resided in the house where the controlled substances and drug paraphernalia were found, and our Supreme Court has found constructive possession to exist where possession is not exclusive but defendant exercises sole or joint physical custody of the premises; and (3) the State presented sufficient evidence placing defendant within such close juxtaposition to the narcotic drugs to justify the jury in concluding that they were in his possession.

Appeal by defendant from judgments entered 6 January 2005 by Judge J. Marlene Hyatt in Watauga County Superior Court. Heard in the Court of Appeals 23 February 2006.

*Attorney General Roy Cooper, by Assistant Attorney General James M. Stanley, Jr., for the State.*

*William D. Auman, for defendant-appellant.*

TYSON, Judge.

Tony Lee Weakley ("defendant") appeals from judgment entered after a jury found him to be guilty of possession of stolen property, possession of a stolen firearm, possession of Valium, possession of marijuana, possession of drug paraphernalia, and possession of methamphetamine. We reverse defendant's conviction for possession of a stolen firearm. We find no error in the judgment entered on all other charges, and remand for re-sentencing.

## I. Background

### A. State's Evidence

Sandra Kay Byrum ("Byrum") and her two sisters owned a house on Broadstone Road in Watauga County. In May 2003, Byrum arrived at the house and discovered it had been broken into and that many items were missing. The telephones had been stolen, so Byrum went to use the neighbor's telephone at the mobile home next door. Byrum knocked on the door of the mobile home and looked inside to see if anyone was home. When Byrum looked inside she saw some of the items missing from her house located on the floor.

Byrum spoke with the Sheriff's Department and prepared a list of the items missing from her house. The Sheriff's Department obtained a search warrant for the mobile home. Sheriff's deputies executed the search warrant and found several items reported stolen from Byrum's house located on the floor of the mobile home and documents identifying Denise Brannigan ("Brannigan") as the resident of the mobile home.

The next day Detective Dee Dee Rominger ("Detective Rominger") obtained a warrant for Brannigan's arrest. Detective Rominger, along with Detective Darren Tolbert ("Detective Tolbert") and Detective Shane Robbins ("Detective Robbins"), went to Brannigan's mobile home to execute the warrant. Brannigan was not home. Detective Rominger remained at the mobile home while Detectives Tolbert and Robbins went to a nearby construction site and spoke with someone who advised them Brannigan might be at defendant's residence on Swamp Box Road.

Detectives Rominger, Tolbert, and Robbins traveled to Swamp Box Road and spoke with defendant's landlord and employer, Mike Perry ("Perry"). Perry testified he knew Brannigan and stated she had worked with a friend and would "help us some." Perry further testified that Brannigan was dating defendant and had been staying at defendant's home "off and on." Perry accompanied the detectives to defendant's residence and knocked on the door. Brannigan opened the door and Detective Rominger advised her of the warrants for her arrest. Brannigan was not fully clothed, and Detective Rominger accompanied her into the residence while Brannigan dressed. Detective Rominger noticed a green and brown leaf-print shower curtain across a window in one of the bedrooms. Detective Rominger recognized the shower curtain from pictures Byrum had provided

of items stolen from her bathroom. Detective Rominger obtained a search warrant for defendant's residence. Upon executing the search warrant, the detectives found numerous other items taken from Byrum's home, three stolen firearms, illegal narcotics, and drug paraphernalia.

The next day Detective Rominger obtained an arrest warrant for defendant. Defendant provided Detective Rominger a statement in which he claimed he was unaware any items were stolen, and his belief that the items, other than the firearms, were placed in his home by Brannigan. Defendant stated Brannigan had told him that "a lady was moving out of a house and was giving her all this stuff."

### B.  Defendant's Evidence

Defendant testified at trial that at the time he was arrested he lived on Swamp Box Road with "another guy named Derrick, I don't recall what his last name was . . . ." Derrick had lived with defendant for approximately a month. Defendant had been dating Brannigan for about two weeks at the time of his arrest. Brannigan spent the night at defendant's residence "a couple of nights a week." Defendant testified Brannigan brought some items to his residence and told defendant she had been cleaning houses and people had given her the items.

Defendant testified that the firearms were brought to his residence by a man named Robert Deluka ("Deluka") as collateral for a loan, and that he was unaware the firearms were stolen. Defendant further testified that the drug items found in his residence did not belong to him and that he did not allow illegal drug use in his home.

Brannigan testified that she brought the stolen items to defendant's residence and defendant "never had any idea that any of it was stolen." Brannigan further testified she told defendant she was cleaning someone's house because they were moving and that person had given her the items. She also testified that she never saw defendant use drugs and that defendant did not like to be around anyone using drugs.

On 6 January 2006, the jury found defendant to be guilty of: possession of stolen property; possession of a stolen firearm; possession of a schedule IV controlled substance (Valium); possession of marijuana; possession of drug paraphernalia; and possession of methamphetamine. Defendant was sentenced as a Prior Record Level II. Defendant received a suspended sentence of a minimum of six

months and a maximum of eight months incarceration for the possession of stolen property and possession of a stolen firearm convictions. He received a suspended sentence of a minimum of six months and a maximum of eight months incarceration for the drug convictions to run consecutively with the possession of stolen property offenses. Defendant appeals.

## II. Issues

Defendant argues the trial court erred in: (1) denying defendant's motion to suppress items found pursuant to the search of his residence; (2) allowing the State to cross-examine Brannigan regarding her failure to give a statement to Detective Rominger; and (3) failing to dismiss all charges due to insufficient evidence.

## III. Motion to Suppress

**[1]** Defendant argues the items seized from his residence should have been suppressed from evidence because (1) Detective Rominger's initial entry into his residence does not satisfy any exception to the search warrant requirement, and (2) no probable cause justified issuance of the search warrant.

In *Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585 (1967), the United States Supreme Court stated, ". . . searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." (Citations omitted).

[I]n *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, *reh'g denied*, 404 U.S. 874, 30 L. Ed. 2d 120 (1971), the U.S. Supreme Court held that the police may seize without a warrant the instrumentalities, fruits, or evidence of crime which is in "plain view" if three requirements are met. First, the initial intrusion which brings the evidence into plain view must be lawful. *Id.* at 465, 29 L. Ed. 2d at 582. Second, the discovery of the incriminating evidence must be inadvertent. *Id.* at 469, 29 L. Ed. 2d at 585. Third, it must be immediately apparent to the police that the items observed constitute evidence of a crime, are contraband, or are otherwise subject to seizure. *Id.* at 466, 29 L. Ed. 2d at 583.

*State v. Williams*, 315 N.C. 310, 317, 338 S.E.2d 75, 80 (1986).

Here, all three elements of the plain view exception to the search warrant requirement are present.

## A. Lawful Presence

First, Detective Rominger was lawfully inside defendant's premises when she observed the shower curtain. *Id.* Detective Rominger and other members of the Watauga County Sheriff's Department, along with Perry, went to defendant's residence to find Brannigan and execute the warrant for her arrest. "[O]fficers are entitled to go to a door to inquire about a matter; they are not trespassers under these circumstances." *State v. Prevette*, 43 N.C. App. 450, 455, 259 S.E.2d 595, 600 (1979) (citing *Ellison v. United States*, 206 F. 2d 476 (D.C. Cir. 1953)). Perry, defendant's employer and owner of the premises, knocked on the door of defendant's residence. Brannigan opened the door, at which time she was advised of the warrants for her arrest.

Brannigan was not fully clothed when law enforcement arrived. Detective Rominger accompanied her into the residence to get dressed before she was transported. Detective Rominger was lawfully entitled to monitor Brannigan's movements while she got dressed. The United States Supreme Court's decision in *Washington v. Chrisman*, 455 U.S. 1, 70 L. Ed. 2d 778 (1982) is instructive on this issue:

> Every arrest must be presumed to present a risk of danger to the arresting officer. There is no way for an officer to predict reliably how a particular subject will react to arrest or the degree of the potential danger. Moreover, the possibility that an arrested person will attempt to escape if not properly supervised is obvious.
>
> . . . .
>
> We hold, therefore, that it is not "unreasonable" under the Fourth Amendment for a police officer, as a matter of routine, to monitor the movements of an arrested person, as his judgment dictates, following the arrest. The officer's need to ensure his own safety—as well as the integrity of the arrest—is compelling. Such surveillance is not an impermissible invasion of the privacy or personal liberty of an individual who has been arrested.

*Id.* at 7, 70 L. Ed. 2d at 785 (internal citations omitted); *see also United States v. Wilson*, 306 F.3d 231, 241 (5th Cir. 2002) ("Even without considering any issue of 'common decency' in transporting a person in underwear to a jailhouse or police station, we hold that in a situation such as this, the potential of a personal safety hazard to the

STATE v. WEAKLEY

[176 N.C. App. 642 (2006)]

arrestee places a duty on law enforcement officers to obtain appropriate clothing."), *cert. denied*, 537 U.S. 1240, 123 155 L. Ed. 2d 211.

Similarly, in *State v. Richards*, 294 N.C. 474, 242 S.E.2d 844 (1978), the police entered the residence where defendant had been living with her accomplice and placed defendant under arrest. *Id.* at 484-85, 242 S.E.2d at 851-52. An officer accompanied defendant into her bedroom to obtain clothing and personal effects. *Id.* at 485, 242 S.E.2d at 852. When the officer followed defendant into her bedroom, he observed a gun in the open top drawer of a dresser. *Id.* Our Supreme Court upheld the seizure of the gun, holding, "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Id.* at 488, 242 S.E.2d at 853 (quoting *Harris v. United States*, 390 U.S. 234, 236, 19 L. Ed. 2d 1067, 1069 (1968)).

### B. Inadvertent Discovery

Second, Detective Rominger discovered the shower curtain inadvertently. *Williams*, 315 N.C. at 317, 338 S.E.2d at 80. Detective Rominger testified, "what caught my eye was in one of the bedrooms there was a window and there was a rod across the window with a green and brown leaf print shower curtain." No evidence was presented that Detective Rominger was specifically looking for the shower curtain. She simply observed it in plain view in one of the bedrooms while accompanying Brannigan to get dressed.

### C. Immediately Apparent

Third, it was immediately apparent to Detective Rominger that the *shower curtain* constituted evidence of a crime. *Id.* Detective Rominger testified "that curtain matched pictures that I had seen, victims has provided me of items that were taken from their bathroom, they had a border in their bathroom that matched this curtain."

Detective Rominger was lawfully in defendant's residence when she observed the shower curtain in plain view. " 'The substance of all the definitions [of probable cause] is a reasonable ground for belief in guilt.' " *State v. Hicks*, 60 N.C. App. 116, 119, 298 S.E.2d 180, 182 (1982) (quoting *Carroll v. United States*, 267 U.S. 132, 161, 69 L. Ed. 543, 555 (1925)). Based on her observation of the shower curtain, which matched pictures of a shower curtain stolen from Byrum's house, Detective Rominger had probable cause to believe defendant's

residence contained stolen items. The search warrant was properly issued and the items seized thereunder were properly admitted. The trial court's denial of defendant's motion to suppress items found pursuant to the search of his residence was proper. This assignment of error is overruled.

## IV. Cross-Examination of Brannigan

[2] Defendant argues the trial court committed plain error in allowing the State to cross-examine Brannigan regarding her failure to give a statement to Detective Rominger in violation of her constitutional rights. We disagree. Under these facts, defendant cannot assert a third party's rights.

In *State v. Lipford*, 81 N.C. App. 464, 467-68, 344 S.E.2d 307, 310 (1986), this Court held, "Defendant has no standing to argue the inadmissibility of the statement on the ground that [the co-defendant's] constitutional rights were violated. As with Fourth Amendment rights, Fifth Amendment rights are personal and may not be vicariously asserted." (citing N.C. Gen. Stat. 15A-972 ("*a defendant who is aggrieved* may move to suppress evidence . . ."); *State v. Ford*, 71 N.C. App. 748, 751, 323 S.E.2d 358, 361 (1984), *disc. rev. denied*, 313 N.C. 511, 329 S.E.2d 397 (1985) (" 'Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.' . . . Only an 'aggrieved' party may move to suppress evidence under G.S. 15A-972 by demonstrating that his personal rights and not those of some third party have been violated."); *United States v. Handley*, 763 F. 2d 1401, 1404 (11th Cir.), *cert. denied*, 474 U.S. 951, 88 L. Ed. 2d 301, (1985) ("A defendant has standing to object on the ground of the fifth amendment self-incrimination privilege to the admission only of his own statements."); *United States v. Shaffner*, 524 F. 2d 1021, 1022 (7th Cir. 1975), *cert. denied*, 424 U.S. 920, 47 L. Ed. 2d 327, (1976) (defendant had no standing to object to introduction of co-defendant's confession on the grounds that it was not voluntarily given)). Clear and long-standing precedents show defendant has no standing to assert Brannigan's constitutional right against self-incrimination. This assignment of error is dismissed.

## V. Motion to Dismiss

Defendant argues the trial court erred in denying his motion to dismiss all charges where insufficient evidence supports each of the essential elements of the charges.

STATE v. WEAKLEY

[176 N.C. App. 642 (2006)]

## A. Standard of Review

The standard for ruling on a motion to dismiss is whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense. Substantial evidence is relevant evidence which a reasonable mind might accept as adequate to support a conclusion. In ruling on a motion to dismiss, the trial court must consider all of the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence. Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal.

*State v. Wood*, 174 N.C. App. 790, 795, 622 S.E.2d 120, 123 (2005) (citations and quotation marks omitted).

## B. Possession of Stolen Property Conviction

[3] Defendant was convicted of possessing stolen goods under N.C. Gen. Stat. § 14-71.1 (2003) ("If any person shall possess any . . . property . . . , the stealing or taking whereof amounts to larceny or a felony, . . . such person knowing or having reasonable grounds to believe the same to have been feloniously stolen or taken, he shall be guilty of a Class H felony . . . .").

The essential elements of felonious possession of stolen property are: (1) possession of personal property, (2) which was stolen pursuant to a breaking or entering, (3) the possessor knowing or having reasonable grounds to believe the property to have been stolen pursuant to a breaking or entering, and (4) the possessor acting with a dishonest purpose.

*State v. McQueen*, 165 N.C. App. 454, 459, 598 S.E.2d 672, 676 (2004), *disc. rev. denied*, 359 N.C. 285, 610 S.E.2d 385-86 (2005).

Defendant challenges evidence to sustain the first and third elements of the felony possession of stolen goods conviction. Regarding the possession element, "[o]ne has possession of stolen property when one has both the power and intent to control its disposition or use." *In re. Dulaney*, 74 N.C. App. 587, 588, 328 S.E.2d 904, 906 (1985) (citation omitted). "One who has the requisite power to control and intent to control access to and use of a vehicle or a house has also the possession of the known contents thereof." *State v. Eppley*, 282 N.C.

249, 254, 192 S.E.2d 441, 445 (1972). The evidence tends to show stolen goods were found throughout defendant's residence. Detective Rominger testified the stolen items "were out on the shelves, the house had been decorated with the items, the rugs were on the floor, the items were sitting on the shelves, the towels were hanging on the towel racks, the utensils were in the drawers, food in the freezer." Sufficient evidence was presented to meet the requisite possession element of the offense.

Defendant argues the State presented insufficient evidence that defendant knew or had reasonable grounds to know the goods brought into his residence by Brannigan were stolen to satisfy the third element of the offense. We disagree.

"Whether the defendant knew or had reasonable grounds to believe that the [property was] stolen must necessarily be proved through inferences drawn from the evidence." *State v. Brown*, 85 N.C. App. 583, 589, 355 S.E.2d 225, 229 (1987). Our Supreme Court has held the legislature intended for the "reasonable man" standard to apply to the offense of possession of stolen goods. *State v. Parker*, 316 N.C. 295, 304, 341 S.E.2d 555, 560 (1986).

Here, the State presented no direct evidence that defendant had actual knowledge the goods Brannigan brought into his home were stolen and relies wholly on circumstantial evidence of possession.

Perry assisted Brannigan in unloading some of the stolen goods in defendant's home. When Perry was asked whether he had any reason to believe the items had been stolen, he replied, "Well, it began to look suspicious. She was suppose [sic] to be cleaning people's houses, she had a ladder, and stuff like that, why would people be giving away something that could be used in cleaning with, nice stuff, you know." Further, defendant referred to the stolen goods as "nice stuff" and told Brannigan "there better not be no stolen stuff in my house." Viewed in the light most favorable to the State, the circumstantial evidence tends to show defendant knew or should have known the goods Brannigan brought into his residence were stolen and is sufficient to withstand a motion to dismiss. *McQueen*, 165 N.C. App. at 459, 598 S.E.2d at 676; *Wood*, 174 N.C. App. at 795, 622 S.E.2d at 123. Despite defendant's and Brannigan's testimony to the contrary, this issue became a factual dispute for the jury to decide. This assignment of error is overruled.

## C. Possession of Stolen Firearm Conviction

**[4]** Defendant was also convicted of felony possession of a stolen firearm pursuant to N.C. Gen. Stat. § 14-71.1. The only evidence presented regarding defendant's knowledge the firearms were stolen came from defendant's testimony. Defendant testified he loaned Deluka money to pay rent and took the firearms as collateral without knowing the firearms were stolen. Deluka did not testify at trial. Perry was asked whether he was aware that defendant had loaned Deluka money, to which he responded, "I'm sure it went both ways all the time."

The State argues defendant's constructive possession of the stolen firearms in his residence is sufficient to withstand defendant's motion to dismiss. The second and third elements of felony possession of stolen goods require that the goods were stolen pursuant to a breaking or entering, and defendant knew or had reasonable grounds to believe the property to have been stolen pursuant to a breaking or entering. *McQueen*, 165 N.C. App. at 459, 598 S.E.2d at 676.

The State presented no evidence the firearms were stolen pursuant to a breaking or entering or that defendant knew or should have known the firearms were stolen. The trial court dismissed defendant's charges of breaking and entering and larceny after breaking and entering. The State presented no evidence of when the firearms were stolen or how long they had been in defendant's possession. Insufficient evidence on this charge was presented to withstand defendant's motion to dismiss. The trial court should have dismissed the felonious possession of stolen firearms charge and erred in submitting defendant's possession of a stolen firearm charge to the jury.

## D. Drug Related Convictions

**[5]** Defendant was also convicted of (1) simple possession of Valium, a schedule IV controlled substance; (2) possession of methamphetamine, a schedule II controlled substance; (3) possession of marijuana up to 1/2 ounce; and (4) possession of drug paraphernalia.

Detective Tolbert testified controlled substances and drug paraphernalia were found when he and the other detectives executed the search warrant at defendant's residence. Detective Tolbert testified that a black box was found under the love-seat in defendant's residence containing a blue pill, the barrel part of a pen, and a small plastic bag containing a white residue. Detective Tolbert testified that a pen barrel is often used to inhale methamphetamine into the body.

Two boxes found under the bathroom sink contained marijuana pipes, a glass vile containing white residue, several other glass vials, a yellow capsule, a blue Valium pill, rolling papers, a plastic bag, a pen barrel, half of a marijuana cigarette, six pieces of aluminum foil with black residue, and a small pocket knife. Detective Tolbert testified that aluminum foil is used to heat methamphetamine and inhale it into the body. Defendant's residence contained only one bathroom. A pocket knife with black residue on the tip was found on a night-stand in a bedroom "to the left as you walk in the door." Detective Tolbert testified it is common for the tip of a knife to be used to clean pipes used to smoke marijuana or other controlled substances. Rolling papers and a "roach clip" was found "in the bedroom to the right." North Carolina State Bureau of Investigations Agent Joe Revis ("Agent Revis") analyzed the items seized from defendant's residence. Agent Revis found methamphetamine residue on two plastic bags.

Defendant argues the State failed to establish the possession element of the drug offenses and asserts the State failed to establish defendant had custody and control of the contraband to the exclusion of others or that defendant knew of the contraband. We disagree.

"An accused has possession of [contraband] . . . when he has both the power and the intent to control its disposition or use. Where direct evidence of power and intent to control are absent, however, these manifestations of actual possession must be inferred from the circumstances." *State v. Thorpe*, 326 N.C. 451, 454, 390 S.E.2d 311, 313 (1990) (citation omitted).

> Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession. *[T]he State may overcome a motion to dismiss or motion for judgment as of nonsuit by presenting evidence which places the accused 'within such close juxtaposition to the narcotic drugs as to justify the jury in concluding that the same was in his possession.'*

*Id.* (quoting *State v. Brown*, 310 N.C. 563, 569, 313 S.E.2d 585, 589 (1984)) (emphasis supplied).

> [C]onstructive possession can be reasonably inferred from the fact of ownership of premises where contraband is found. Such

ownership is strong evidence of control and "gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession."

*Id.* at 455, 390 S.E.2d at 314 (quoting *State v. Harvey*, 281 N.C. 1, 12, 187 S.E.2d 706, 714).

Here, undisputed evidence was presented that defendant leased and resided in the house where the controlled substances and drug paraphernalia were found. When the search warrant was executed, another man also lived in the residence and Brannigan had stayed there a couple of nights a week. Our Supreme Court has found constructive possession to exist "where possession is not exclusive but defendant exercises sole or joint physical custody" of the premises. *Id.* at 455, 390 S.E.2d at 313 (citing *State v. Brown*, 310 N.C. 563, 313 S.E.2d 585 (defendant had key and was seen repeatedly at apartment where contraband was found)). The State presented sufficient evidence "within such close juxtaposition to the narcotic drugs as to justify the jury in concluding that the same was in his possession" to overcome defendant's motion to dismiss. *Id.* at 454, 390 S.E.2d at 313. This assignment of error is overruled.

## VI. Conclusion

The trial court did not err in denying defendant's motion to suppress items found pursuant to the search of defendant's residence. Defendant has no standing to object to the State's cross-examination of Brannigan on the grounds that it violated her constitutional rights. The trial court properly denied defendant's motion to dismiss the possession of stolen goods and drug related charges.

The trial court erred in denying defendant's motion to dismiss the possession of a stolen firearm charge. Defendant's conviction for possession of a stolen firearm is reversed. In all other respects defendant received a fair trial free from prejudicial errors he assigned and argued.

No error in part, Reversed in part, Remanded for re-sentencing.

Judges McCULLOUGH and LEVINSON concur.