IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-521

Filed: 4 February 2020

Sampson County, No. 16 CRS 243

STATE OF NORTH CAROLINA

v.

BRANDON ALAN PARKER

Appeal by defendant from judgment entered 12 June 2018 by Judge Ebern T. Watson, III in Sampson County Superior Court. Heard in the Court of Appeals 8 January 2020.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Michael T. Wood, for the State.*
>
> *Michael E. Casterline for defendant-appellant.*

TYSON, Judge.

Brandon Alan Parker ("Defendant") appeals from a jury's verdict convicting him of possession of a firearm by a felon. We find no error.

## I. Background

Four men from Jacksonville, North Carolina drove to Garland, North Carolina on the morning of 5 March 2015 intending to purchase marijuana. Michael Harbin drove his mother's black Toyota Camry vehicle, with Carlos James and Derrick

Copeland as passengers.  A fourth man followed Harbin, driving a Ford Explorer vehicle.  Copeland had set up the drug purchase from Jafa McKoy in Garland.

The men arrived in Garland between 10:00 and 10:30 a.m.  The driver of the Explorer parked at a nearby apartment complex and stayed with that vehicle. Harbin, James, and Copeland drove down a side road to a house located at 90 Sugar Hill Lane, in an area of Garland with a reputation for drug trafficking.  They observed two men.  Copeland recognized McKoy standing in front of the porch, while another man was observed sitting on the porch.  McKoy introduced the other man as "P." Neither Copeland nor Harbin knew or had met "P."

McKoy told the three men the marijuana was not present, so they went to buy cigarettes at a nearby gas station.  They left the gas station at 11:13 a.m. and returned to Sugar Hill Lane, after a quick stop at the Explorer.  They again saw McKoy and "P," but also saw a compact car and a third man, not previously present.

McKoy told Copeland the marijuana was inside the compact car.  Copeland gestured to Harbin to accompany him and both men started walking towards the compact car.  As they walked, Harbin turned and saw the unknown third man behind him.

James was left inside Harbin's mother's Camry with its keys.  "P" jumped off the porch holding a revolver and moved towards the Camry.  McKoy held a gun,

turned towards Copeland and Harbin, and shot at them. Copeland and Harbin escaped by running into the woods, without knowing what had happened to James.

Copeland and Harbin returned to the Explorer, still parked with its driver at the nearby apartment complex, and the three men rode back to Sugar Hill Lane looking for James. They could not find him and returned to the gas station at 11:49 a.m. After trying to contact James by phone and failing to reach him, Harbin called the police at 12:24 p.m.

Freddie Stokes, a resident of the house at 90 Sugar Hill Lane, returned home around 12:30 p.m. He saw a body in his driveway and a parked black vehicle beside the body. Stokes called the police around 12:33 p.m. The police found James laying on his back. He had been shot once in the back of the head and was dead. The police found no money in James' pockets or in his wallet.

Police showed Harbin two photographic line-ups of eight photos at the police station that afternoon. Harbin identified McKoy in the first set of photos. Harbin was unable to identify a suspect from the second set of photos.

Copeland's probation officer showed him a photographic line-up of eight photos four days after James' murder on 9 March 2015. He identified Defendant's photograph as a suspect for the man introduced by McKoy as "P" with 85 to 90 percent confidence. He also identified another man's photograph as a suspect with 60 percent confidence.

North Carolina State Bureau of Investigation Agent William Brady ("Agent Brady") interviewed Defendant nearly two weeks after James' death on 18 March 2015 at the request of the Sampson County Sheriff's Office. Defendant was provided his *Miranda* rights and initially told Agent Brady he was not present at Sugar Hill Lane in Garland on 5 March 2015. Approximately seventeen minutes into the interview, Defendant admitted he was present at that address on that morning. Defendant told Agent Brady he had arrived at 90 Sugar Hill Lane, which he called "the dope hole," early in the morning, but asserted he had left by 8:30 or 9:00 a.m. that morning.

Defendant denied seeing a black car while there but did see a gray car among several cars with people coming to and going from the area. He denied any knowledge of the men from Jacksonville or of the drug deal Copeland had arranged with McKoy.

Defendant also repeatedly denied killing anyone or being present when someone was killed. At some point during the interview, Defendant admitted to Agent Brady: "Maybe they saw me on the porch." Defendant told Agent Brady he drove north to his cousin's house in Newton Grove after he had left Sugar Hill Lane.

Defendant was indicted for first-degree murder, possession of a firearm by a felon, two counts of assault with a deadly weapon with intent to kill, robbery with a deadly weapon, two counts of attempted robbery with a deadly weapon, and attaining habitual felon status.

At trial, the State presented testimony from Jane Peterson, who had been dating Defendant at or about the time of James' death. Peterson described Defendant's appearance at the time: he "had a beard, cut close" and had a tattoo on his arm and one on his face.

During Peterson's *voir dire* testimony, while the jury was not present, the trial court heard arguments about a photograph of Defendant which the State sought to have admitted for illustrative purposes. The State argued for its admission into evidence:

> Your Honor, I have just asked Ms. Peterson how Mr. Parker appeared back in March of 2015 as opposed to how he appears today or any other time, and she's described him as having a beard, tattoos. Your Honor, other witnesses have described the man on the porch having a beard. A witness testified that he -- the man on the porch had a tattoo on his chest. Your Honor, and, as I have said, it would illustrate her testimony.

The State could not specify who took the photograph or when it was taken but gave the court assurances that Peterson had verified it was a fair and accurate representation of how Defendant had appeared in March 2015. Defendant objected on several grounds, including the lack of a proper foundation and that the photograph was more prejudicial than probative under N.C. R. Evid. 403.

The trial court conducted a *voir dire* of Peterson's testimony and ruled the photograph would be admissible for illustrative purposes only. The State moved to admit the evidence upon the jury's return. Defendant objected and the trial court

overruled Defendant's standing objection and admitted the photograph for illustrative purposes only. The State asked Peterson to show the photograph to the jury and confirm it was consistent with Defendant's appearance in March 2015.

The State obtained a probable cause search warrant for Defendant's cell phone records on 18 March 2015. The State tendered and the trial court accepted a Federal Bureau of Investigation special agent, Michael Sutton ("FBI Agent Sutton"), as an expert witness on historical cell site analysis and cellular technology. FBI Agent Sutton testified Defendant's phone was being used in an area of Garland which includes Sugar Hill Lane from approximately 8:09 to 9:57 a.m. on 5 March 2015. From 9:57 to approximately 11:38 a.m., Defendant's phone was not in use and no location could be identified.

Defendant's phone was once again located by the same cell tower in Garland at 11:38 a.m., but was then north/northwest of its previous location, towards Clinton. By 11:49 a.m., Defendant's phone was located in Clinton, not Newton Grove. FBI Agent Sutton testified he did not analyze Defendant's cell site records past 11:49 a.m.

Defendant moved to dismiss all charges for insufficiency of the evidence at the close of the State's presentation of its case. The trial court found the State had presented insufficient evidence tending to show Defendant possessed the specific intent to kill under a theory of acting in concert and dismissed the counts of assault with a deadly weapon with intent to kill. The trial court denied Defendant's motion

to dismiss the remaining charges. Defendant did not testify or present any evidence at trial.

The jury found Defendant guilty of possession of a firearm by a felon. The jury found Defendant not guilty of the remaining charges. Defendant stipulated and pled guilty to attaining habitual felon status. The trial court determined Defendant was a Prior Record Level V offender and sentenced Defendant as a habitual felon to an active term of 105 to 138 months in prison. Defendant gave notice of appeal in open court.

## II. Jurisdiction

This Court possesses jurisdiction over Defendant's appeal from judgment as a matter of right pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2019).

## III. Issues

Defendant argues the trial court erred by denying his motion to dismiss the charge of possession of a firearm by a felon for insufficient evidence. Defendant also argues the State misrepresented evidence before the trial court and made false and misleading statements to the jury during closing arguments, which deprived him of a fair trial.

## IV. Motion to Dismiss

### A. Standard of Review

The standard for ruling on a motion to dismiss is whether there is substantial evidence (1) of each essential element

of the offense charged and (2) that defendant is the perpetrator of the offense. Substantial evidence is relevant evidence which a reasonable mind might accept as adequate to support a conclusion. In ruling on a motion to dismiss, the trial court must consider all of the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence.

*State v. Weakley*, 176 N.C. App. 642, 651, 627 S.E.2d 315, 321 (2006) (citation omitted).

## B. Analysis

Defendant argues the trial court erred in denying his motion to dismiss all charges for insufficient evidence. The State's eyewitnesses did not provide a positive identification of Defendant at trial. Defendant asserts the other evidence connecting him to James' death was circumstantial and insufficient. Viewing the evidence in the light most favorable to the State, we disagree.

Defendant argues the State offered insufficient direct evidence, and the State's circumstantial evidence raised only conjecture that Defendant was the same man McKoy had identified as "P." This argument discounts the materiality of circumstantial evidence on a trial court's ruling on a motion to dismiss and our standard of review on appeal.

The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial, or both. *Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence.* If a reasonable inference of defendant's guilt may be drawn

from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy it beyond a reasonable doubt that the defendant is actually guilty.

*State v. McDaniel*, 372 N.C. 594, 603-04, 831 S.E.2d 283, 290 (2019) (emphasis supplied) (citations, alterations, and internal quotation marks omitted).

Presuming, *arguendo*, but without deciding the State offered no direct evidence that Defendant was the man identified by McKoy as "P," the State's case survives a motion to dismiss with sufficient circumstantial evidence to support a reasonable inference of Defendant's guilt. *See id.*

To support the trial court's denial of Defendant's motion to dismiss the remaining charges, Defendant voluntarily admitted he was present at 90 Sugar Hill Lane on the morning of James' death, and that he might have been seen by Copeland, Harbin, and James on the porch with McKoy. Defendant's cell phone was located in Garland near the scene close to the approximate time of the incident.

Copeland identified Defendant from a photo array as the armed suspect on the porch and present at the scene with "85 to 90 percent" confidence. Copeland testified "P" had a "beard, brown skin, [and a] tattoo on the upper cheek," and estimated he was about 6'2" tall and weighed about 240 pounds. Harbin testified "P" was wearing a hat, had a beard, and "was like a burley dude, like a kind of bigger dude."

The State also presented testimony from Jane Peterson, Defendant's girlfriend at the time of the incident. She described Defendant's appearance at the time: he "had a beard, cut close" and had one tattoo "on his arms and one on his face."

Although this evidence may not rule out every hypothesis of Defendant's innocence, that is not the State's burden on Defendant's motion to dismiss. *Id*. at 604, 831 S.E.2d at 290. The evidence is sufficient to support a reasonable inference of Defendant's guilt, when viewed in the light most favorable to the State. *See id.* The trial court correctly ruled the State presented sufficient evidence to submit the remaining charges to the jury. Defendant's argument is overruled.

## V. Prosecutorial Misconduct

Defendant argues he is entitled to a new trial because prosecutorial misconduct denied him a fair trial. Defendant argues the State made false statements about testimonial evidence on four occasions during the trial: once while arguing for the admission of the photograph of Defendant for illustrative purposes, and three times during closing argument.

Arguing for the admission of the photograph, the prosecution stated, "a witness testified that he -- the man on the porch had a tattoo on his chest." Although Defendant's girlfriend, Peterson, had just testified to this fact about Defendant, no witness had testified to this description of "P." The prosecution mentioned witness' testimony that "P" had a chest tattoo three more times during closing arguments.

The prosecution twice attributed this alleged testimony to Copeland, who never testified that "P" had a chest tattoo.

### A. Constitutional Right to a Fair Trial

Our Supreme Court has stated the Fourteenth Amendment to the Constitution of the United States guarantees that "[e]very person charged with a crime has an absolute right to a fair trial. . . . It is the duty of both the court and the prosecuting attorney to see that this right is sustained." *State v. Williams*, 362 N.C. 628, 638, 669 S.E.2d 290, 298 (2008) (citation omitted). "The district attorney owes honesty and fervor to the State and fairness to the defendant in the performance of his duties as a prosecutor." *State v. Britt*, 288 N.C. 699, 710, 220 S.E.2d 283, 290 (1975).

However, "a constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal." *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982); *see also* N.C. R. App. P. 10(a). Defendant did not raise a constitutional objection to any of the prosecutor's misstatements that a witness testified "the man on the porch had a tattoo on his chest."

Defendant's counsel objected to the admissibility of the photograph on multiple grounds during arguments outside the presence of the jury but made no constitutional arguments. Defendant argued the State had not laid a proper foundation for the photograph, and the danger of prejudice to Defendant by its admission substantially outweighed its probative value under N.C. R. Evid. 403.

Defendant's counsel did not object on any grounds, constitutional or otherwise, to the prosecutor's statement to the court outside the presence of the jury that a "witness testified that . . . the man on the porch had a tattoo on his chest."

Defendant failed to object to any statements made during the State's closing arguments. Defendant's constitutional argument was not "raised and passed upon in the trial court" and so we do not consider this asserted basis on appeal. *Id.* Because Defendant's arguments also raise the distinct issue of improper closing arguments, we proceed to review that issue separately.

## B. Closing Argument

### 1. Standard of Review

The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*. In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.

*State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002) (citation omitted). Prosecutors' arguments must be devoid of appeals to passion or prejudice. *Id.* at 135, 558 S.E.2d at 108.

Our Supreme Court also cautioned that an appellate court should "not review the exercise of this discretion unless there be such gross impropriety in the argument as would be likely to influence the verdict of the jury." *State v. Covington*, 290 N.C. 313, 328, 226 S.E.2d 629, 640 (1976). "[F]or an inappropriate prosecutorial comment to justify a new trial, it must be sufficiently grave that it is prejudicial error." *State v. Soyars*, 332 N.C. 47, 60, 418 S.E.2d 480, 487-88 (1992) (citation and internal quotation marks omitted).

## 2. Analysis

> In North Carolina it is well settled that counsel is allowed wide latitude in the argument to the jury. Even so, counsel may not, by argument or cross-examination, place before the jury incompetent and prejudicial matters by injecting his own knowledge, beliefs, and personal opinions not supported by the evidence. A prosecutor must present the State's case vigorously while at the same time guarding against statements which might prejudice the defendant's right to a fair trial.

*State v. Hill*, 311 N.C. 465, 472-73, 319 S.E.2d 163, 168 (1984) (citations and internal quotation marks omitted).

Later that year after the opinion in *Hill* was filed, our Supreme Court in *State v. Huffstetler* further expounded: "Arguments of counsel are largely in the control and discretion of the trial court. The appellate courts ordinarily will not review the exercise of that discretion unless the impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury." *State v. Huffstetler,* 312 N.C. 92, 111, 322 S.E.2d 110, 122 (1984).

"The prosecuting attorney should use every honorable means to secure a conviction, but it is his duty to exercise proper restraint so as to avoid misconduct, unfair methods or overzealous partisanship which would result in taking unfair advantage of the accused." *State v. Holmes*, 296 N.C. 47, 50, 249 S.E.2d 380, 382 (1978).

If Defendant or his counsel believes the State's argument is improper, they are obliged to speak and object to preserve the error for appellate review. Our Supreme Court cautioned:

> When [a] defendant does not object to comments made by the prosecutor during closing arguments, only an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken.

*State v. Richardson*, 342 N.C. 772, 786, 467 S.E.2d 685, 693 (1996).

Here, the State argued to the jury on three occasions during closing arguments that eyewitness testimony described "P" as having a chest tattoo, when the only testimony at trial about a chest tattoo had been in reference to Defendant. Defendant argues the State's case was "exceedingly thin" and was based solely on Copeland's and Harbin's identifications of Defendant as "P." As such, Defendant asserts these three misstatements rise to the level of prejudicial error to award a new trial.

Defendant correctly quotes the State's closing argument as stating the "bottom line in this case" was: "Who is the man on the porch?" Defendant has not carried the

burden of showing the repeated, mistaken invocation of supposed eyewitness testimony that "P" had a chest tattoo was so grossly improper "as would be likely to influence the verdict of the jury." *Covington*, 290 N.C. at 328, 226 S.E.2d at 640. The chest tattoo was not the sole characteristic the State relied on to identify Defendant as "P." The eyewitness testimony describing "P" was also consistent with Defendant's height, frame, skin color, beard, and other tattoos. The State's misstatements may have given the jury greater confidence in identifying Defendant as "P," but Defendant has failed to show that the jury would have reached a different verdict without the three misstatements.

As noted, the prosecution's comments erroneously summarized the evidence and were improper. However, Defendant has also failed to show the remarks were so grossly or extremely improper for us to conclude the trial judge "abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken." *Richardson*, 342 N.C. at 786, 467 S.E.2d at 693. Defendant's arguments are overruled.

## VI. Conclusion

When viewed in the light most favorable to the State, including the reasonable inferences thereon, the State presented sufficient evidence for all the remaining charges including possession of a firearm by a felon to be submitted to the jury. The

trial court properly denied Defendant's motion to dismiss the charges submitted to the jury.

Defendant failed to raise a constitutional question or object at trial with respect to the prosecution's misstatements about eyewitness testimony. Without objection from Defendant, the State's closing argument was not prejudicial error to award a new trial. Defendant has also failed to show any error in the trial court's discretionary and asserted failure to intervene *ex mero motu*.

Defendant received a fair trial, free from prejudicial errors he preserved and argued. We find no prejudicial error in the jury's verdict or in the judgment entered thereon. *It is so ordered.*

NO ERROR.

Judges DILLON and MURPHY concur.