McGEE, Chief Judge.
*682 Mollie Elizabeth B. McDaniel ("Defendant") appeals her convictions for felonious *8 breaking and entering and larceny after breaking and entering. For the reasons discussed below, we vacate Defendant's convictions.
I. Factual and Procedural Background
Daniel Sheline ("Mr. Sheline") inherited five acres of real property and a three-bedroom house located at 30 Woody Street in Marion, North Carolina, in February 2014. Mr. Sheline visited the house at 30 Woody Street on 20 March 2014 to "check on it, [and] make sure nothing had been bothered." Mr. Sheline observed a number of items of personal property in the house during the 20 March 2014 visit, including an aluminum ladder and push lawnmower, both in the basement; an *683 unrestored cuckoo clock; miscellaneous furniture; aluminum pots and pans; heirloom china; an Atari electronic gaming system; and a monitor heater, located behind the front door of the house, which was wired and plumbed through copper tubing to a kerosene oil tank outside the house. The monitor heater was in working order, the copper tubing was intact, and there was kerosene in the outside oil tank.
When Mr. Sheline left the house on 20 March 2014, he locked the front door's knob lock. Mr. Sheline did not have a key to the deadbolt lock, which could only be locked from the inside, so he left the deadbolt unlocked. The door to the basement of the house was pulled shut and secured from the inside with a padlock that "had a screwdriver through it [so that] nobody could open it from the outside." Mr. Sheline testified "[t]he only way ... [to] open [the basement door] would be to crawl through a window or have a key and go down the [interior] steps and open it [from inside the house]." The house also had a side door that was nailed shut. Mr. Sheline posted a "no trespassing" sign on the front door of the house, and stated that, as of 20 March 2014, "[n]o one [else] had permission to go into the house at all."
When Mr. Sheline returned to the house at 30 Woody Street on 1 April 2014, the deadbolt to the front door was locked and the doorknob lock was unlocked. The basement door and a window next to the basement door were both open, and the padlock to the basement door was missing. As Mr. Sheline walked up the stairs from the basement into the house, he smelled a strong odor of kerosene. He "found the whole living room floor was full of [leaked] kerosene and the monitor heater was missing." The piping from the heater to the outside oil tank had been cut and the copper tubing was missing. Mr. Sheline noticed that other items were missing from the house, including the aluminum ladder, lawnmower, and cuckoo clock. The house's electrical wiring had been ripped from the electric box and removed, and various plumbing fixtures were also missing. Mr. Sheline's wife called the police to report the stolen property.
Lieutenant Detective Andy Manis ("Lt. Det. Manis") of the McDowell County Sherriff's Office ("MCSO") received information on 2 April 2014 that the property missing from the house at 30 Woody Street was located at a house at 24 Ridge Street. Lt. Det. Manis went to investigate and found a monitor heater, lawnmower, aluminum ladder, pipes, and wiring outside the residence at 24 Ridge Street. Lt. Det. Manis knocked on the door. Stephanie Rice ("Ms. Rice") answered the door and provided information to Lt. Det. Manis indicating a person driving a white pickup truck had unloaded the property at 24 Ridge Street earlier that day.
*684 Mr. Sheline later identified the items found at 24 Ridge Street as the property missing from 30 Woody Street.
Detective Jason Grindstaff ("Det. Grindstaff") of the MCSO received a report on 4 April 2014 that someone had again entered the house at 30 Woody Street, left in a white pickup truck, and turned down Ridge Street. Det. Grindstaff went to Ridge Street and found a white Chevrolet pickup truck parked directly across the street from the house at 24 Ridge Street. Defendant was sitting in the driver's side of the truck. Det. Grindstaff asked Defendant for identification and permission to search the vehicle. With Defendant's permission, Det. Grindstaff searched the truck's interior cabin and outer truck bed. He found an Atari gaming system, glassware, china, and an antique clock in the bed of the truck. Det. Grindstaff arrested Defendant. Mr. Sheline later confirmed the items found in the truck were property from *9 30 Woody Street. Mr. Sheline testified the property found in the white pickup truck on 4 April 2014 "might have been" in the house at 30 Woody Street when he was there on 1 April 2014.
According to Det. Grindstaff, Defendant said she "got [the property in the pickup truck] from a residence on Woody Street[,]" but indicated "[s]omeone gave her ... permission to go inside the residence and get the property." Defendant stated that a friend of hers, Michael Nichols ("Nichols") "told her a neighbor [of] Mr. Sheline [ ] gave them permission to enter the residence." Defendant also told Det. Grindstaff that Nichols had been at 24 Ridge Street shortly before Det. Grindstaff arrived, but "had just left the residence ... [and] she did not know where [Nichols] was going."
Defendant testified she met Nichols in 2012 and worked with him "doing some salvage work at [an] old abandoned place at 50 Woody Street[,] ... going through and taking some old metal and stuff, working together on that." Defendant stated she and Nichols went to the residence at 30 Woody Street in October 2013 and spoke to an elderly man who answered the door. According to Defendant, the elderly man gave Nichols and Defendant permission to remove a plow and some scrap metal from the basement at 30 Woody Street. Nichols and Defendant took the items to the building at 50 Woody Street, where they were collecting scrap metal to sell. Defendant stopped working with Nichols in late 2013. She collected unemployment benefits for several months and, when those benefits ended, she began working with Nichols again.
Defendant testified that on 2 April 2014, at Nichols's request, she drove a white pickup truck to the building at 50 Woody Street and *685 "loaded some stuff on the truck" from a crawl space underneath the building, including a ladder, monitor heater, "and various other things that were all under there in that spot." Defendant testified she believed the items belonged to a friend of Nichols who was storing them at 50 Woody Street. Nichols asked Defendant "to bring the truck up and carry [the property] down [the hill] for him." Defendant testified she drove the items to 24 Ridge Street and deposited them outside the residence, "up against the side of the building."
Defendant testified Nichols called her on 4 April 2014 and
asked me to give him a ride to the scrap yard. He said he had a load of aluminum or something. I got to his house and he said he wasn't ready to go yet, but that I could go up the hill [to the building at 50 Woody Street]. There was still a bunch of stuff over there in the house he thought I might be interested in.... In the meantime, [Nichols said] if I wanted to go up there and look around and see if there [was] anything that I might be interested in, there was still a lot of stuff up there at the house at 50 [Woody Street].... So I went up there and got the items that [Det. Grindstaff found] on my truck out of the attic of [the] house at [50 Woody Street] at that time.
Defendant stated she drove the truck to 24 Ridge Street, where she saw Nichols and another man loading bags of aluminum cans into the trunk of a car. According to Defendant, Nichols and the man drove away hurriedly and, as Nichols was driving away, Defendant saw Det. Grindstaff approaching. Defendant admitted she told Det. Grindstaff that she had recently removed the property in her truck from a house "on Woody Street," but testified she was referring to the building at 50 Woody Street. Defendant testified she had not been to the house at 30 Woody Street since going there with Nichols in October 2013.
Defendant was charged by separate indictments on 21 July 2014 with (1) one count of felony breaking and entering and one count of larceny after breaking and entering, on or about 20 March 2014, in connection with the lawnmower, aluminum ladder, monitor heater, kerosene, electrical wiring, flooring, and cuckoo clock found at 24 Ridge Street on 2 April 2014; and (2) one count of felony breaking and entering and one count of larceny after breaking and entering, on 4 April 2014, in connection with the Atari game system, heirloom china, and antique radio found in Defendant's truck on that date. The charges were joined for trial.
*10 *686 At the close of the State's evidence, Defendant moved to dismiss the charges related to the alleged 20 March 2014 breaking and entering and larceny based on insufficiency of the evidence. The State conceded it was
a circumstantial case, obviously, that [Defendant was] the one that broke into the house [at 30 Woody Street] the first time and brought the items and deposited them at [24] Ridge Street, and then two days later [ ] broke[ ] in [to the house at 30 Woody Street] again and [came] back to Ridge Street with another load.
Nevertheless, the State contended the evidence that, on 4 April 2014, Defendant was found in possession of certain stolen property from a purported second break-in was sufficient to show Defendant was "also responsible for the larceny [of the other property] and the break-in for the first time because it[ ] [was] Ridge Street [again]." Defense counsel noted Defendant was not present when the stolen property was discovered at 24 Ridge Street on 2 April 2014, and further observed "it wasn't [Defendant's] residence[.]"
The trial court initially indicated it would allow Defendant's motion to dismiss with respect to the 20 March 2014 charges only. Before the presentation of Defendant's evidence, however, the court revisited the matter, stating it "may have dismissed the wrong one[.]" The court expressed some confusion over the dates of the alleged offenses:
TRIAL COURT: I did dismiss the [20 March 2014 breaking and entering charge], but what I am telling you is I may have gotten them backwards. I should have dismissed the April 4 [2014] [breaking and entering charge] and left the March 20 [2014] [charge] in place based on this evidence. I want to make sure I have time to correct that since nothing has happened at this point in time.... The way I see it is the only testimony as to opening the window, the door [at 30 Woody Street], all the situations are from one incidence. We don't have any testimony there was any sort of entry that second time, and that admission that [Defendant] makes was not peculiar to win. The evidence that [the State] brought out [that] somebody reported seeing the [white pickup truck], I think all that does is goes to the state of mind of this officer. I think it's only offered for that purpose.... [T]herefore, it cannot be used as substantive evidence of any particular crime. As a result *687 [ ], I may have dismissed-by dismissing the April 4 [2014] allegation, I am basically-I may have committed error to the State because that's the later one, and it would be hard for you to relate the original breaking and entering that was testified to today to that indictment because it was the wrong date. I may have missed [sic] the wrong one.... I can correct it right now without any prejudice to [ ] [D]efendant. I was thinking it over through lunch and I may have dismissed the wrong one.
After further discussion, the trial court concluded the State had presented insufficient evidence to support two separate charges of breaking and entering. The court reinstated both charges in the indictment dated 20 March 2014, i.e. , one count of felonious breaking and entering and one count of larceny after breaking and entering. It dismissed the 4 April 2014 charge of breaking and entering, but left in place the 4 April 2014 charge of larceny after breaking and entering, finding there was "evidence to show that the [property found in Defendant's possession on 4 April 2014] was acquired as a result of the original breaking and entering [that allegedly occurred on 20 March 2014]." However, the court indicated that, if the jury ultimately convicted Defendant of both larcenies, it "would have to entertain whether or not arrested judgment would be appropriate to combine those larcenies into [a] single larceny[.]"
Defendant was found guilty of one count of felony breaking and entering and two counts of larceny after breaking and entering on 24 January 2017. The trial court arrested judgment on the 4 April 2014 larceny conviction. Defendant was sentenced to an active sentence of four months' imprisonment, to be followed by sixty months of supervised probation. Defendant appeals.[1]
*11 *688 II. Defendant's Appeal
Defendant argues the trial court erred by denying her motion to dismiss because the State presented insufficient evidence Defendant was the perpetrator of a breaking and entering or a larceny that allegedly occurred on or about 20 March 2014. We agree.
A. Standard of Review
"This Court reviews the trial court's denial of a motion to dismiss de novo ." State v. Smith , 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "The standard of review for a motion to dismiss in a criminal case is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." State v. Irons , 189 N.C. App. 201, 204, 657 S.E.2d 733, 735 (2008) (citation and internal quotation marks omitted). The trial court should consider the evidence in the light most favorable to the State, and "the State is entitled to all reasonable inferences which may be drawn from the evidence. Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal." State v. Burke , 185 N.C. App. 115, 118, 648 S.E.2d 256, 258-59 (2007) (citation and internal quotation marks omitted). However, "[i]f the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed." State v. Fritsch , 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citations and quotation marks omitted).
B. Analysis
Defendant was convicted for felonious breaking and entering and larceny after breaking and entering that allegedly occurred on or about 20 March 2014. "The elements of felonious breaking and entering under [N.C. Gen. Stat.] § 14-54(a) are (1) the breaking or entering, (2) of any building, (3) with the intent to commit any felony or larceny therein." State v. Poore , 172 N.C. App. 839, 841, 616 S.E.2d 639, 640 (2005) (citation and internal quotation marks omitted); see also *689 N.C. Gen. Stat. § 14-54(a) (2017). "The essential elements of larceny are: (1) taking the property of another; (2) carrying it away; (3) without the owner's consent; and (4) with the intent to deprive the owner of the property permanently." State v. Wilson , 154 N.C. App. 686, 690, 573 S.E.2d 193, 196 (2002) (citations omitted). "[W]here larceny is committed pursuant to breaking and entering, it constitutes a felony without regard to the value of the property in question." State v. Richardson , 8 N.C. App. 298, 301, 174 S.E.2d 77, 79 (1970) (citation omitted); see also N.C. Gen. Stat. § 14-72(b)(2) (2017).
In the present case, the State conceded at trial its evidence against Defendant was entirely circumstantial. The State advanced *12 the doctrine of recent possession, which our Supreme Court has described as
a rule of law that, upon an indictment for larceny, possession of recently stolen property raises a presumption of the possessor's guilt of the larceny of such property. The presumption is strong or weak depending upon the circumstances of the case and the length of time intervening between the larceny of the goods and the discovery of them in [a] defendant's possession. Furthermore, when there is sufficient evidence that a building has been broken into and entered and thereby the property in question has been stolen, the possession of such stolen property recently after the larceny raises presumptions that the possessor is guilty of the larceny and also of the breaking and entering.
State v. Maines , 301 N.C. 669, 673-74, 273 S.E.2d 289, 293 (1981) (citations omitted). "For the doctrine of recent possession to apply, the State must show: (1) the property was stolen, (2) [the] defendant had possession of the property, subject to his control and disposition to the exclusion of others, and (3) the possession was sufficiently recent after the property was stolen[.]" State v. McQueen , 165 N.C. App. 454, 460, 598 S.E.2d 672, 676-77 (2004) (citations omitted); see also State v. Pickard , 143 N.C. App. 485, 487, 547 S.E.2d 102, 104 (2001) (noting State must prove each element of recent possession "beyond a reasonable doubt." (citation omitted) ).
The "mere possession of stolen property is insufficient to raise a presumption of guilt." McQueen , 165 N.C. App. at 460, 598 S.E.2d at 677 (citations omitted). This Court has held that "[e]xclusive possession does not necessarily mean sole possession. Exclusive possession means possession to the exclusion of all persons not party to the crime ." State v. Foster , 149 N.C. App. 206, 209, 560 S.E.2d 848, 851 (2002) (citation and *690 internal quotation marks omitted) (emphasis added). "The possession must be so recent after the breaking or entering and larceny as to show that the possessor could not have reasonably come by it, except by stealing it himself or by his concurrence." State v. Hamlet , 316 N.C. 41, 43, 340 S.E.2d 418, 420 (1986) (citations omitted).
As an initial matter, we observe that Defendant was not convicted of breaking and entering, or sentenced for larceny, in connection with the stolen property actually found in her possession on 4 April 2014. Defendant was convicted on charges stemming from a breaking and entering and larceny that, according to the relevant indictment, occurred "on or about" 20 March 2014. That indictment specifically described the property stolen on that date as "a Sears pushmower, aluminum ladder, monitor heater, 100 gallons of kerosene, electrical wiring, flooring[,] and a German [cuckoo] clock." These items were discovered by Lt. Det. Manis at 24 Ridge Street on 2 April 2014, outside Defendant's presence, although Defendant admitted she drove a short distance with the property in her truck earlier that day. Thus, the State's own evidence suggested that up to two weeks may have passed between the alleged breaking and entering and larceny, on or around 20 March 2014, and the discovery of the stolen property, on 2 April 2014, and the property was not actually found in Defendant's possession.
In Maines , which the dissent cites for its statement of the elements of recent possession, our Supreme Court explicitly defined the second element of the doctrine as follows: "[T]he stolen goods were found in [the] defendant's custody and subject to his control and disposition to the exclusion of others though not necessarily found in [the] defendant's hands or on his person so long as he had the power and intent to control the goods[.]" 301 N.C. at 674, 273 S.E.2d at 293 (emphases added). "Exclusive" possession may include joint possession by "co-conspirators or persons acting in concert in which case the possession of one criminal accomplice would be the possession of all." Id. at 675, 273 S.E.2d at 294. Regardless, under Maines , "the evidence must show the person accused of the theft had complete dominion, which might be shared with others, over the property ... which sufficiently connects the accused person to the crime[.]" Id. (emphasis added).
*13 Defendant acknowledged she was briefly in possession of the stolen property on 2 April 2014, when she transported it a few blocks from a building at 50 Woody Street, where the property was being stored, to the residence at 24 Ridge Street. The dissent appears to conclude this constituted "requisite actual possession and control over the recently stolen property" sufficient to connect Defendant with the theft that *691 occurred two weeks prior. As noted above, however, "mere possession of stolen property is insufficient to raise a presumption of guilt." McQueen , 165 N.C. App. at 460, 598 S.E.2d at 677 (citations omitted). In Maines , the mere fact that the defendant "was driving the car [containing the stolen property] and presumably in control of it and its contents" was insufficient to support an inference that he was the thief based on the doctrine of recent possession. Maines , 301 N.C. at 676, 273 S.E.2d at 294. In this case, like the Maines defendant, Defendant testified she did not know the property was stolen, and believed it belonged to a friend of Nichols, when she put it in her truck on 2 April 2014. She also testified that, as of 2 April 2014, her last contact with Nichols was in "November or early December of 2013." There was no evidence tending to show Defendant possessed, controlled, or exercised dominion over the stolen property during the two weeks between the date of the alleged theft and her admitted transport of that property. Compare with State v. Lytton , 88 N.C. App. 758, 759, 365 S.E.2d 6, 7 (1988) (holding evidence was sufficient to raise recent possession doctrine where "evidence [did] not suggest that anyone other than [the] defendant and [another individual who was party to the crime] possessed, controlled, or had anything to do with the [stolen property]; instead ... only they had and controlled the [stolen property] by showing [it] to [a third party], offering to sell [it], setting their price, and receiving the purchase money.").
Moreover, the State was required to demonstrate Defendant possessed the stolen property "to the exclusion of all persons not party to the crime ." Maines , 301 N.C. at 675, 273 S.E.2d at 294 (emphasis added). The dissent asserts that, in this case, "[n]o one disputes Nichols was a party to taking the [stolen] items hidden underneath 50 Woody Street[.]" We note the record does not indicate whether Nichols was charged in connection with the stolen property identified in either indictment, and the State did not assert a criminal conspiracy between Defendant and Nichols. However, even assuming arguendo that Nichols was a party to the crime, the State failed to show that, between 20 March 2014 and 2 April 2014, the possession of the stolen property by Defendant and/or Nichols was "to the exclusion of all persons not party to the crime ." Id. The evidence suggests the stolen property was stored at an abandoned building at 50 Woody Street after its theft and before Defendant took it to 24 Ridge Street two weeks later. There was no evidence tending to show that, between 20 March 2014 and 2 April 2014, Defendant possessed, controlled, or even knew of the stolen property located at 50 Woody Street. The evidence also did not show the stolen property was not possessed or controlled by any third parties unconnected to the crime during those two weeks. In the absence of such showing, the *692 State's evidence was insufficient to support an inference that Defendant broke into Mr. Sheline's residence on 20 March 2014 and stole the property she transported to 24 Ridge Street two weeks later.
This case is factually distinguishable from State v. Wilson , 313 N.C. 516, 330 S.E.2d 450 (1985), and State v. Foster , 149 N.C. App. 206, 560 S.E.2d 848 (2002), cases cited by the dissent. In Wilson , our Supreme Court held "[i]t is not always necessary that the stolen property be actually in the hands of the defendant in order to trigger the inference that [the defendant was] the thief. The doctrine [of recent possession] is equally applicable where the stolen property is under the defendant's personal control ." Id. at 536, 330 S.E.2d at 464 (citations omitted) (emphasis added). In Wilson , the Court held the jury was properly instructed on the doctrine of recent possession where a stolen watch "was seen [after the theft] only in the hands of the [defendant's girlfriend] or the defendant until it was sold by the defendant." Id. (emphasis in original). The defendant's girlfriend was seen wearing the watch "two or three weeks *14 after the crime[ ] [was] committed[,] [and a] week later the watch was seen in the hands of the defendant." Id. at 535, 330 S.E.2d at 463-64. Under these circumstances, a jury instruction on recent possession was appropriate, notwithstanding "the intervening possession of the watch by [the defendant's girlfriend][.]" Id. at 535, 330 S.E.2d at 464.
In Foster , the defendant was seen driving a truck containing stolen property mere hours after the property was stolen. There were two passengers in the truck. On appeal, the defendant did not argue the jury was improperly instructed on the doctrine of recent possession; he contended the trial court erroneously refused to include the instruction that "the [stolen] goods must be found in [the] defendant's possession 'to the exclusion of others.' " 149 N.C. App. at 209, 560 S.E.2d at 850. This Court held the trial court properly denied the defendant's request for the additional instruction because "[t]he evidence [did] not suggest that anyone other than [the] defendant or the other passengers possessed or controlled the [stolen property] seen in the back of the truck [the] defendant was driving." Id. at 209, 560 S.E.2d at 851.
Unlike in Wilson , there was no evidence in the present case connecting the property found at 24 Ridge Street on 2 April 2014 to Defendant during the two weeks between its theft and her admitted transport of the property from 50 Woody Street to 24 Ridge Street. There was no evidence Defendant went to 50 Woody Street during those two weeks, or that the stolen property was otherwise under Defendant's "personal control." Further, even assuming possession of the property by Nichols could be imputed to Defendant, the State did not establish that only *693 Nichols possessed or controlled the property after it was stolen, i.e. , to the exclusion of any third parties not connected to the crime.
The dissent also cites State v. Johnson , 60 N.C. 235 (1864), in which stolen property was found six weeks after its theft in a house occupied exclusively by the defendant and his wife. Our Supreme Court affirmed the trial court's jury instruction that
owing to the length of time which had elapsed from the stealing of the goods until the discovery of them in the possession of the defendant, no presumption could arise that [the defendant] had stolen them ; but the fact of his having them in possession was evidence which [the jury] would consider with the other evidence in the cause in determining [the defendant's] guilt or innocence.
60 N.C. at 236 (emphasis added). The Court explicitly held that, although the defendant's possession of stolen goods was "evidence to be considered[,]" the mere fact of possession did not "raise a legal presumption of the taking[.]" Id. at 237. Johnson thus offers little guidance in the present case, because the precise question before us is whether the State's evidence did "raise a legal presumption" of Defendant's guilt based on the theory of recent possession.
The State's argument that Defendant broke into Mr. Sheline's residence around 20 March 2014 and stole the items that were found at 24 Ridge Street on 2 April 2014 was based entirely on the evidence that Defendant admitted transporting the property on 2 April 2014, and, two days later, Det. Grindstaff found Defendant in a white pickup truck, parked across from the house at 24 Ridge Street, in possession of entirely different personal property that was also missing from the house at 30 Woody Street.[2] We find this evidence insufficient to support Defendant's convictions on the 20 March 2014 charges based on the doctrine of recent possession. Defendant admitted the stolen property found outside the house at 24 Ridge Street was briefly in her possession on 2 April 2014. However, the State presented no evidence that, other than that brief period of time on 2 April 2014, the property was in Defendant's possession or subject to Defendant's control, much less "to the exclusion of all persons not party to the crime." See Foster , 149 N.C. App. at 209, 560 S.E.2d at 851 (citation and quotation marks omitted). As *15 discussed above, there was no evidence suggesting Defendant had exclusive possession or control of the stolen property during the two *694 weeks that elapsed between the alleged crimes, on or about 20 March 2014, and Defendant's admitted transport of the property on 2 April 2014.
The State contends that, because Defendant "ha[d] the power and intent to control the access to and use of [her truck][,] [she] ha[d] possession of the [vehicle's] known contents[ ]" when, by her own admission, she transported the stolen property on 2 April 2014. According to the State, Defendant was "the driver and only authorized user of the truck[,]"[3] and "there [was] no evidence that [ ] Nichols was present in the truck at the time [Defendant] had possession of the stolen items."[4] Even taking these statements as true, they do not establish exclusive possession.
In Maines , our Supreme Court held that "the fact [that the defendant] was driving the car [containing stolen property] and presumably in control of its contents" was alone insufficient to support an inference that "he was the thief who stole [the property] based on the possession of stolen goods." Maines , 301 N.C. at 676, 273 S.E.2d at 294. In that case, the State failed to show the stolen goods found in the defendant's possession were "subject to his control and disposition to the exclusion of others." Id. at 675, 273 S.E.2d at 294. In this case, Defendant testified she did not know the property was stolen when Nichols told her it belonged to a friend and asked her to drive it to another residence. She also testified that, prior to 2 April 2014, she last spoke with Nichols in November or December 2013. Under Maines , the mere fact that Defendant transported stolen property did not demonstrate the property was "subject to [her] control and disposition to the exclusion of others." Id.
Because the State failed to prove beyond a reasonable doubt the second element[5] of the doctrine of recent possession, the evidence was *695 insufficient to support Defendant's convictions for the breaking and entering and larceny that allegedly occurred on or about 20 March 2014. Accordingly, we vacate Defendant's convictions. As a result, we need not address Defendant's remaining argument regarding the length of her probation. See , e.g. , State v. Martin , 222 N.C. App. 213, 222, 729 S.E.2d 717, 724 (2012).
VACATED.
Judge DAVIS concurs.
Judge TYSON dissents by separate opinion.

Defendant filed a petition for writ of certiorari with this Court on 11 September 2017 in light of procedural defects in her notice of appeal. Defendant failed to comply with N.C.R. App. P. Rule 4, which provides that a party entitled to appeal in a criminal case may do so by (1) giving oral notice of appeal at trial, or (2) filing a written notice of appeal with the clerk of superior court within fourteen days of entry of judgment. See N.C.R. App. P. 4(a). In the present case, Defendant failed to comply with either provision. Defendant contends she gave oral notice of appeal after the trial concluded and after defense counsel had left the courtroom. Thus, although the trial court entered appellate entries dated 24 January 2017, Defendant's notice of appeal was not recorded and does not appear in the trial transcript. See , e.g. , State v. Hughes , 210 N.C. App. 482, 485, 707 S.E.2d 777, 778 (2011) ("Although the record includes appellate entries ... which indicate through boilerplate that defendant gave notice of appeal, mere appellate entries are insufficient to preserve the right to appeal." (citation and quotation marks omitted) ). Defendant also did not file a written notice of appeal with the clerk of court. See , e.g. , State v. Blue , 115 N.C. App. 108, 113, 443 S.E.2d 748, 751 (1994) (concluding defendant did not preserve right to appeal convictions where record "contained no written notices of appeal as required by Rule 4 of the Rules of Appellate Procedure."). Defendant failed to preserve her right to appeal, subjecting the appeal to dismissal. See State v. Briley , 59 N.C. App. 335, 337, 296 S.E.2d 501, 503 (1982) ("Rules of Appellate Procedure are mandatory and failure to observe them is grounds for dismissal of an appeal." (citations omitted) ). The State did not raise the issue of defective notice. We exercise our discretion to issue the writ of certiorari and reach the merits of Defendant's appeal. See State v. Hammonds , 218 N.C. App. 158, 162-63, 720 S.E.2d 820, 823 (2012).

We note Defendant was not charged with possession of stolen property in either indictment at issue in this case.

The State did not present evidence Defendant was the "only authorized user of the truck[.]" Defendant testified the white pickup truck "belonged to [her] father[.]" When asked whether "[she was] the one driving [the truck] all the time," Defendant stated: "I [ ] borrowed it during that week [in April 2014]. I didn't drive it all the time, but [my father] let me borrow it occasionally."

The parties dispute whether Defendant ever represented that Nichols was a passenger in the truck when she transported the stolen property to 24 Ridge Street on 2 April 2014, but Defendant submits that she "was not charged with conspiracy, nor was the jury instructed on acting in concert, [so] [ ] Nichols was 'not a party to the crime' and his [hypothetical] possession of the alleged[ly] stolen items could not be attributed to [Defendant]."

The dissent contends that "[w]hether the two weeks, which may have passed between the breaking and entering and larceny and the discovery of the property being stolen, and Defendant's admitted possession, is too remote to apply the doctrine of recent possession was a proper question for the jury[.]" We note that whether a defendant's possession of stolen property was sufficiently "recent" after the larceny is the third element of the doctrine of recent possession, and our holding in this case "turns upon the second element [of the doctrine]: whether the stolen goods were found in [D]efendant's custody and subject to [her] control and disposition to the exclusion of others." See Maines , 301 N.C. at 675, 273 S.E.2d at 294. Because we have concluded the State failed to prove exclusive possession, it is unnecessary to consider whether Defendant's possession of the stolen property was "too remote to apply the doctrine of recent possession[.]"