IN THE SUPREME COURT OF NORTH CAROLINA

No. 161A18

Filed 16 August 2019

STATE OF NORTH CAROLINA

v.

MOLLIE ELIZABETH B. McDANIEL

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 817 S.E.2d 6 (N.C. Ct. App. 2018), vacating defendant's convictions on appeal from judgments entered on 24 January 2017 by Judge J. Thomas Davis in Superior Court, McDowell County. Heard in the Supreme Court on 8 April 2019.

*Joshua H. Stein, Attorney General, by Deborah M. Greene, Assistant Attorney General, and Lauren Lewis Ikpe, Assistant Attorney General, for the State-appellant.*

*Gilda C. Rodriguez for defendant-appellee.*

MORGAN, Justice.

This appeal by the State of North Carolina, which comes to this Court on the basis of a dissenting opinion which was issued in the disposition of this case by the North Carolina Court of Appeals, requires consideration of the doctrine of recent possession and its utilization here to prove the charges of breaking and entering and the charge of larceny. In the appellate court below, the majority and the dissent disagreed on the issue of whether the State presented sufficient evidence to establish

that defendant in this case actually possessed the allegedly stolen property pursuant to the cited legal doctrine in order to survive a motion to dismiss. In light of our conclusion that the evidence presented at trial concerning defendant's possession of goods was sufficient to support defendant's conviction under the doctrine of recent possession, we reverse the Court of Appeals' decision and remand the case for consideration of defendant's arguments not addressed therein.

*Factual Background and Procedural History*

The charges in this matter arose from at least two apparent break-ins and thefts of items from an unoccupied house located at 30 Woody Street in Marion. Daniel Patrick Sheline, Sr. had inherited the three-bedroom house and a trailer on five acres of land upon his father's death in February 2014. Sheline lived in Black Mountain and neither he nor anyone else resided at the 30 Woody Street address after his father's death. On 20 March 2014, Sheline spent time at 30 Woody Street, sorting through the personal property that had belonged to his father and to Sheline's deceased brother. Sheline had paid particular attention to the items in the house on that date, forming a "sort of . . . inventory in [his] mind" of the items inside the house, including those stored in the basement. When Sheline left the house, he engaged the lock on the knob of the front door, but did not employ the deadbolt lock. Sheline secured the basement door from the inside of the house by inserting a screwdriver through a padlock such that the door could not be opened from the outside. The only

other door entering the house, which was located on the side of the building, had been nailed shut. Sheline had not given anyone permission to enter 30 Woody Street or to remove any items from the property.

On 1 April 2014, Sheline returned to 30 Woody Street, accompanied by his wife on this occasion. He discovered that someone had tampered with the front door, because its deadbolt lock was now engaged. Sheline further found that the basement door was ajar, the padlock that had secured the basement door was missing, and an adjacent window had been pried open. A number of items were missing from the house, including a monitor heater, copper tubing, an aluminum ladder, a lawnmower, and a cuckoo clock, as well as electrical wiring and various plumbing fixtures. Sheline's wife reported the theft to the McDowell County Sheriff's Office ("MCSO"). Lieutenant Detective Andy Manis of the MCSO initiated an investigation. On 2 April 2014, Manis's captain received a tip that some of the property which had been removed from 30 Woody Street could be found at a house located at 24 Ridge Street in Marion, about a quarter of a mile from 30 Woody Street. In following up on the tip, Manis went to 24 Ridge Street and discovered outside of the house a monitor heater, some copper tubing, an aluminum ladder, a lawnmower, pipes, and wiring. Sheline subsequently identified the items as those which were taken from 30 Woody Street. When Manis knocked on the door of 24 Ridge Street, a woman who identified herself as Stephanie Rice answered and reported that two people in a white Chevrolet pickup truck with an extended cab had unloaded the items earlier that day.

Following this phase of the investigation, warrants were issued for defendant Mollie Elizabeth B. McDaniel and Michael Nichols in connection with the 2 April break-in and theft at 30 Woody Street.

On 4 April 2014, MCSO Detective Jason Grindstaff received a report that an unauthorized person had again entered the house at 30 Woody Street and was seen departing that location in a white pickup truck that turned onto Ridge Street. Grindstaff drove to 24 Ridge Street and saw defendant sitting in the driver's seat of a white pickup truck which was parked in the driveway of the house located across the street from the 24 Ridge Street address. Defendant gave Grindstaff permission to search the truck, and Grindstaff discovered an Atari gaming system, glassware, china, and an antique clock radio in the bed of the vehicle. Grindstaff then arrested defendant, who was subsequently charged with one count of felonious breaking and entering and one count of felonious larceny based upon events that allegedly occurred on or about 20 March 2014, and one count of felonious breaking and entering and one count of felonious larceny based upon events that allegedly occurred on or about 4 April 2014.

The charges arising from the events of 20 March and 4 April 2014 were joined for trial. Sheline, Manis, and Grindstaff testified at trial to the facts recounted above. In addition, Grindstaff testified that defendant had admitted to him that she had taken the property which was found in the white pickup truck at the time of her

arrest from a house on Woody Street, but defendant claimed that she had permission to remove the property. Grindstaff further testified that defendant told Grindstaff that Michael Nichols had asked her to help remove items from the house at 30 Woody Street after an unidentified neighbor had given Nichols permission to enter the premises.

At the close of the State's evidence, defendant entered a general motion to dismiss all of the charges which arose from the alleged 20 March 2014 and 4 April 2014 occurrences. While defendant did not offer any legal argument in support of her dismissal motion, defendant emphasized her position on the dismissal of the 20 March charges. After a brief discussion, the trial court agreed with defendant and allowed the motion to dismiss the 20 March charges, reasoning as follows:

> I don't see any connection between being across the street except in the proximity of it.
>
> As to the file number 14 CRS 50512, which is the indictment from March 20, 2014, which based on the evidence is the first breaking and entering and larceny, the Court is going to allow your motion. As to the other one on April 4, 2014, which is file 14 CRS 50509, the Court is going to deny your motion there. You basically got an admission that she went to the house and got that stuff out of that house. You have problems with that one.

After a recess for lunch, the trial court expressed confusion about its previous decision regarding defendant's motion to dismiss:

THE COURT: Let's go back to this motion for directed verdict. Let me go back and revisit that a little bit. The way I see the evidence is [that] we have got evidence of one breaking and entering, then we have this defendant with the property at a particular time with an admission that she went in there and took some of that property. I'm not sure—I may have dismissed the wrong one because basically what it comes down to is you have one breaking and entering. The one I dismissed was alleged on April 4.

[DEFENSE COUNSEL]: I thought you dismissed the other one.

THE COURT: I did dismiss the other one, but what I am telling you is I may have gotten them backwards. I should have dismissed the April 4 one and left the March 20 one in place based on this evidence. I want to make sure I have time to correct that since nothing has happened at this point in time.

I want to revisit that, but I want to see—I understand your continuing evidence of two breaking and enterings. The way I see it is the only testimony as to opening the window, the door, all the situations are from one incidence. We don't have any testimony there was any sort of entry that second time, and that admission that she makes was not peculiar to [when].

The evidence that you brought out about somebody reported seeing the car, I think all that does is goes to the state of mind of this officer. I think it's only offered for that purpose. If it's offered for any other purpose I think it would violate the hearsay rule. I think that's the only reason it comes in; therefore, it cannot be used as substantive evidence of any particular crime.

As a result thereof, I may have dismissed—by dismissing the April 4 allegation, I am basically—I may have committed error to the State because that's the later one, and it would be hard for you to relate the original

breaking and entering that was testified to today to that indictment because it was the wrong date.

I may have [dis]missed the wrong one. I want to hear from you, at least from that analysis, what your position is. I can correct it right now without any prejudice to the defendant. I was thinking it over through lunch and I may have dismissed the wrong one.

After an extended exchange with the prosecutor and defense counsel, the trial court

resolved the motions to dismiss as follows:

So that dismissal is stricken. So the indictment in 14 CRS 50512 as to the allegations of the March 20, 2014, on or about that date, is still in place both as to the breaking and entering and as to the larceny.

Now, as to the other file, which is file number 50509, the Court believes the only evidence that's been produced by the State—that there has not been substantial evidence shown of two breaking and enterings. There has only been substantial evidence as to one breaking and entering. I am relating that to the March 20, 2014 indictment.

Therefore, the breaking and entering charge in the indictment in File No. 14 CRS 50509 is dismissed. But the second count, larceny after breaking and entering, there is evidence to show that that stuff was acquired as a result of the original breaking and entering, that there was evidence to show, so the Court is not dismissing that larceny charge. The jury will just have to consider these two larcenies separately. If the jury comes back and finds her guilty of both larcenies, the Court would have to entertain whether or not arrested judgment would be appropriate to combine those larcenies into that single larceny, but that may depend on some of the evidence that comes out here in the second part of this case.

After this reconsideration by the trial court of its decision to grant defendant's motion to dismiss the 20 March 2014 charges of one count of felonious breaking and entering and one count of felonious larceny and its denial of defendant's motion to dismiss the 4 April 2014 charges of one count of felonious breaking and entering and one count of felonious larceny, the trial court changed its rulings. At this stage in the proceedings, the trial court struck its previous dismissals and restored both of the 20 March 2014 charges, hence denying defendant's motion to dismiss those charges; however, with regard to the 4 April 2014 charges, the trial court allowed defendant's motion to dismiss the felonious breaking and entering charge and denied defendant's motion to dismiss the felonious larceny charge.

Defendant testified that in October 2013 she was doing salvage work at an old abandoned house at 50 Woody Street with her friend Michael Nichols and that she and Nichols had visited the house next door at 30 Woody Street. Defendant stated that "an elderly gentleman" answered the door at 30 Woody Street and allowed defendant and Nichols to remove scrap metal and a plow from the home's basement. Defendant explained that she had stopped working at 50 Woody Street in November or December 2013 because she felt that Nichols was "shirking" and leaving most of the work to her. Defendant testified that after her unemployment benefits which she had been collecting from the termination of a previous job ran out, she contacted Nichols to work with him again.

Defendant further testified that on 2 April 2014, at Nichols' request, defendant drove Nichols to the house at 50 Woody Street, where the two "loaded some stuff on [defendant's] truck." Defendant stated that Nichols told her that the items stored outside and underneath the house at 50 Woody Street belonged to a friend of Nichols. Defendant explained that she performed salvage work at 50 Woody Street alone on 3 April, and that she returned to the house on 4 April after Nichols told her that she could "look around and see if there [was] anything [defendant] might be interested in." Defendant stated that she took various items from the attic of 50 Woody Street and put them in the bed of her pickup truck. Defendant said she then drove to Nichols' home at 24 Ridge Street and parked across the street, only to see Nichols and another man driving away after loading aluminum cans into the vehicle. At this point, Detective Grindstaff arrived on the scene.

Defendant testified that when Grindstaff asked her, "You have been up there at that house, haven't you? I said, Yes." Defendant explained that she later realized that the detective misunderstood her admission to be a reference to the house at 30 Woody Street, while defendant had been referring to the house next door at 50 Woody Street. Defendant insisted in her testimony that she had not been to 30 Woody Street since October 2013 and had believed that, on that occasion, she and Nichols had permission to remove the plow and other items from 30 Woody Street at that time. Defendant further testified that she believed that she had permission to remove the

various items of property from 50 Woody Street in April 2014, including the goods that Grindstaff discovered in the bed of her pickup truck.

At the close of all of the evidence, defendant moved to dismiss the remaining charges of one count of felonious breaking and entering and two counts of felonious larceny. The trial court denied the motion. Following the arguments of counsel, the trial court instructed the jury, *inter alia*, on the doctrine of recent possession as follows:

> For this doctrine to apply the State must prove three things beyond a reasonable doubt:
>
> First, that the property was stolen.
>
> Second, that the defendant had possession of this property. A person possesses property when that person is aware of its presence and has, either alone or together with others, both the power and intent to control its disposition or use.
>
> And third, that the defendant had possession of this property so soon after it was stolen and under such circumstances as to make it unlikely that the defendant obtained possession honestly.
>
> If you find these things from the evidence beyond a reasonable doubt, you may consider them together with all other facts and circumstances in deciding whether or not the defendant is guilty of breaking or entering and larceny.

The jury returned verdicts finding defendant guilty of felonious breaking and entering and felonious larceny in file number 14 CRS 50512 (the 20 March 2014 charges) and felonious larceny in file number 14 CRS 50509 (the remaining 4 April

2014 charge). With the agreement of the prosecutor and defense counsel, the trial court then arrested judgment on the felonious larceny offense in 14 CRS 50509. The trial court imposed consecutive terms of incarceration of six to seventeen months on each of the two convictions arising from the events of 20 March 2014, suspended the active sentences, imposed sixty months of supervised probation, and required defendant to serve an active sentence of four months as a condition of probation. The trial court also ordered payment of restitution and attorney fees. Defendant appealed.

At the North Carolina Court of Appeals, defendant raised two issues, asserting that the trial court erred in (1) denying her motion to dismiss on the basis of insufficiency of the evidence that she was the perpetrator of the 20 March 2014 breaking and entering and the subsequent larceny and (2) placing her on supervised probation for sixty months without making a statutorily required finding that such extended term of probation was necessary. With regard to the sufficiency of the evidence, defendant noted that the State did not present any direct evidence linking defendant either to breaking and entering or to larceny after breaking and entering, instead relying upon the doctrine of recent possession. On appeal, defendant contended that the evidence at trial was insufficient to send the charges to the jury for consideration as to both her culpable possession of the items allegedly stolen on 20 March 2014 and the recency of her possession of said items.

The Court of Appeals was divided in its decision. The majority agreed with defendant's position regarding the imputation to her of possession of the property at issue and vacated the judgments entered upon her convictions. *See State v. McDaniel*, 817 S.E.2d 6 (N.C. Ct. App. 2018). The majority began by observing that

> Defendant was not convicted of breaking and entering, or sentenced for larceny, in connection with the stolen property *actually found in her possession* on 4 April 2014. Defendant was convicted on charges stemming from a breaking and entering and larceny that, according to the relevant indictment, occurred "on or about" 20 March 2014. That indictment specifically described the property stolen on that date as "a Sears pushmower, aluminum ladder, monitor heater, 100 gallons of kerosene, electrical wiring, flooring[,] and a German [cuckoo] clock." These items were discovered by Lt. Det. Manis at 24 Ridge Street on 2 April 2014, outside Defendant's presence, although Defendant admitted she drove a short distance with the property in her truck earlier that day. Thus, the State's own evidence suggested that up to two weeks may have passed between the alleged breaking and entering and larceny, on or around 20 March 2014, and the discovery of the stolen property, on 2 April 2014, and the property was not actually found in Defendant's possession.

*Id.* at 12 (alterations in original). The majority went on to note that the only evidence that defendant actually possessed the items alleged to have been stolen on 20 March 2014 was her own testimony that "she was briefly in possession of the stolen property on 2 April 2014, when she transported it a few blocks from a building at 50 Woody Street, where the property was being stored, to the residence at 24 Ridge Street." *Id.* at 13.

The majority cited precedent from this Court including *State v. Maines*, 301 N.C. 669, 674, 273 S.E.2d 289, 293 (1981) ("[T]he stolen goods were found in defendant's custody and subject to his control and disposition to the exclusion of others though not necessarily found in defendant's hands or on his person so long as he had the power and intent to control the goods . . . ."), and *State v. Wilson*, 313 N.C. 516, 536, 330 S.E.2d 450, 464 (1985) ("It is not always necessary that the stolen property be actually in the hands of the defendant in order to trigger the inference that he is the thief. The doctrine [of recent possession] is equally applicable where the stolen property is under the defendant's personal control [in the form of the defendant's girlfriend wearing the stolen watch several weeks after the alleged theft]."). Ultimately, the Court of Appeals majority in the instant case opined:

> The State contends that, because Defendant "ha[d] the power and intent to control the access to and use of [her truck][,] [she] ha[d] possession of the [vehicle's] known contents[ ]" when, by her own admission, she transported the stolen property on 2 April 2014. According to the State, Defendant was "the driver and only authorized user of the truck[,]" and "there [was] no evidence that [ ] Nichols was present in the truck at the time [Defendant] had possession of the stolen items." Even taking these statements as true, they do not establish exclusive possession.

*Id.* at 15 (alterations in original) (footnote omitted). In light of this determination regarding exclusive possession, the majority did not consider defendant's arguments concerning the temporal proximity component of the doctrine of recent possession based on the passage of time between the alleged theft on 20 March 2014 and

defendant's admitted transfer of the items from one location to another via her pickup

truck on 2 April 2014.[1]

Judge Tyson dissented because, in his view,

> Defendant admitted she alone had transported the items
> that had been stolen on or about 20 March 2014 in her
> truck and she had unloaded them at the Ridge Street
> address. Her possession of the recently stolen goods was
> exclusive and 100% within her control at that time.
> Whether the two weeks, which may have passed between
> the breaking and entering and larceny and the discovery of
> the property being stolen, and Defendant's admitted
> possession, is too remote to apply the doctrine of recent
> possession was a proper question for the jury and does not
> support vacating Defendant's conviction as a matter of law.

*Id.* at 17 (Tyson, J., dissenting) (*citing Wilson*, 313 N.C. at 536–37, 330 S.E.2d at 464).

On 1 June 2018, the State filed a motion for temporary stay and a petition for

writ of supersedeas in this Court. On the same date, the Court allowed the motion

for temporary stay. The State filed its notice of appeal on 19 June 2018 based upon

the dissenting opinion in the Court of Appeals. The Court allowed the State's petition

for writ of supersedeas on 25 June 2018.

*Analysis*

---

[1] Neither the majority nor the dissent addressed defendant's contentions of error concerning the length of her supervised probation.

We consider a trial court's ruling on a motion to dismiss de novo. *See State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980).

> Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.
>
> If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed.

*Id.* at 98, 261 S.E.2d at 117 (citations omitted). In challenges to the sufficiency of evidence, this Court reviews the evidence in the light most favorable to the State. *E.g.*, *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). Contradictions and discrepancies are for the fact-finder to resolve. *Id.* at 544, 417 S.E.2d at 761. The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial, or both. *E.g.*, *State v. Bullard*, 312 N.C. 129, 160, 322 S.E.2d 370, 388 (1984). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988) (citation omitted). If "a reasonable inference of defendant's guilt may be drawn from the circumstances," then "it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty." *State v. Thomas*, 296 N.C. 236, 244, 250 S.E.2d 204, 209 (1978) (emphasis omitted) (quoting *State v.*

*Rowland*, 263 N.C. 353, 358, 139 S.E.2d 661, 665 (1965)). "Any contradictions or conflicts in the evidence are resolved in favor of the State, and evidence unfavorable to the State is not considered." *State v. Miller*, 363 N.C. 96, 98, 678 S.E.2d 592, 594 (2009) (citations omitted).

The doctrine of recent possession is

> a rule of law that, upon an indictment for larceny, possession of recently stolen property raises a presumption of the possessor's guilt of the larceny of such property. The presumption is strong or weak depending upon the circumstances of the case and the length of time intervening between the larceny of the goods and the discovery of them in defendant's possession. Furthermore, when there is sufficient evidence that a building has been broken into and entered and thereby the property in question has been stolen, the possession of such stolen property recently after the larceny raises presumptions that the possessor is guilty of the larceny and also of the breaking and entering.

*Maines*, 301 N.C. at 673–74, 273 S.E.2d at 293 (citations omitted). Applying the doctrine in that case, the Court stated that

> the stolen goods were found in defendant's custody and subject to his control and disposition to the exclusion of others though not necessarily found in defendant's hands or on his person so long as he had the power and intent to control the goods . . . .
>
> The "exclusive" possession [may include] . . . . joint possession of co-conspirators or persons acting in concert in which case the possession of one criminal accomplice would be the possession of all. . . .

*Id.* at 674–75, 273 S.E.2d at 293–94 (citation omitted). In sum, the Court in *Maines* concluded that "the evidence must show the person accused of the theft had complete dominion, which might be shared with others, over the property . . . which sufficiently connects the accused person to the crime. *Id.* at 675, 273 S.E.2d at 294.

In the present case, defendant was convicted by a jury on the charges of felonious breaking and entering and felonious larceny in case file 14 CRS 50512. These convictions arose from an indictment which listed the property stolen on the offense date of 20 March 2014 as "a Sears pushmower, aluminum ladder, monitor heater, 100 gallons of kerosene, electrical wiring, flooring and a German cuckoo clock." The evidence at trial, taken in the light most favorable to the State, tended to show that: (1) items listed in the indictment which charged defendant with commission of the alleged 20 March offenses were discovered at 24 Ridge Street on 2 April 2014; (2) two unnamed individuals reportedly had unloaded those items listed in the indictment from a white pickup truck and left them at 24 Ridge Street; (3) an individual operating a white pickup truck was seen entering 30 Woody Street on 4 April 2014, removing items from the house, driving away from the address, and then turning onto Ridge Street; (4) on that same date, MCSO Detective Grindstaff discovered items which were reported as stolen from 30 Woody Street earlier that day in the bed of a pickup truck with defendant seated in the driver's seat; (5) defendant admitted that she had loaded the items listed in the indictment as stolen from 30 Woody Street on 4 April 2014 into the bed of her truck on that date; (6) defendant

admitted that at some point in April, she had "load[ed] up" into her pickup truck "the ladder you have spoken of, and the monitor heater, and various other things that were all under" the house at 50 Woody Street and delivered these items to Ridge Street; and (7) defendant acknowledged that she had previously visited the house at 30 Woody Street in October 2013 and participated in the removal of various items from the residence.

In sum, defendant acknowledged that she was in control of, and in possession of, the aluminum ladder, monitor heater, and other items identified in the 20 March indictment as of 2 April 2014, which was two weeks after the alleged 20 March offenses involving these items. Even under defendant's self-serving testimony, her possession of the property at issue is deemed to be exclusive despite her effort to minimize her criminal culpability by couching her possession and transportation of the stolen items as the responsibility of Nichols, who also was charged in connection with the 20 March 2014 offenses. Defendant's position is unpersuasive because the extent and strength of her ownership interest in the property is inconsequential in evaluating the existence of the determinative factors undergirding the doctrine of recent possession in the face of defendant's motion to dismiss. " '[E]xclusive' possession" may include "joint possession of co-conspirators or persons acting in concert in which case the possession of one criminal accomplice would be the possession of all." *Maines*, 301 N.C. at 675, 273 S.E.2d at 294. Taken in the light most favorable to the State and giving the State the benefit of every reasonable

inference, the evidence presented at trial constituted substantial evidence of the second prong under the doctrine of recent possession—exclusive possession. Defendant was aware of the presence of the property which was situated in the bed of her white pickup truck and had, either by herself or together with her co-worker and joint actor Nichols, both the power and intent to control the disposition or use of the items. *See Wilson*, 313 N.C. at 536, 330 S.E.2d at 464. Thus, the Court of Appeals majority erred in vacating defendant's convictions.

We therefore reverse the decision of the Court of Appeals and remand this case to that appellate court for consideration of defendant's argument regarding the third prong of the doctrine of recent possession—the sufficiency of the recency of defendant's possession of the property at issue—as well as consideration of defendant's argument that the trial court erred in imposing upon her an extended term of probation.

REVERSED AND REMANDED.

Justice DAVIS did not participate in the consideration or decision of this case.

Justice EARLS dissenting.

The evidence to support Ms. McDaniel's conviction for breaking and entering, and larceny after breaking and entering, based on her alleged possession of items stolen from the uninhabited residence at 30 Woody Street on 20 March 2014 is insufficient. McDaniel's conviction is not based on the items found in her possession on 4 April 2014, but instead is based on the items *not found* in her possession from a breaking and entering that occurred on or about 20 March 2014. *State v. McDaniel*, 817 S.E.2d 6, 8–9 (N.C. Ct. App. 2018). The doctrine of recent possession requires the State to show beyond a reasonable doubt that:

> (1) the property described in the indictment was stolen; (2) the stolen goods were found in defendant's custody and subject to his control and disposition to the exclusion of others though not necessarily found in defendant's hands or on his person so long as he had the power and intent to control the goods; . . . and (3) the possession was recently after the larceny, mere possession of stolen property being insufficient to raise a presumption of guilt.

*State v. Maines*, 301 N.C. 669, 674, 273 S.E.2d 289, 293 (1981) (citations omitted). At issue in this case is whether, taking all the evidence in the light most favorable to the State, there is substantial evidence of the second element above. *See State v. Barnes,* 345 N.C. 146, 148, 478 S.E.2d 188, 189–90 (1996). The stolen items, namely a monitor heater, copper tubing, aluminum ladder, lawnmower, pipes, and wiring, were never found in McDaniel's possession. McDaniel instead admitted to briefly transporting the items for her employer Nichols on 2 April 2014. The State offered no evidence

that McDaniel had the "power and intent to control the goods" to the exclusion of others, between the date of the breaking and entering that occurred on or about 20 March 2014 and the date McDaniel admitted to transporting the items on 2 April 2014. Furthermore, there was no evidence that McDaniel even knew the items had been stolen from 30 Woody Street at the time she was transporting them for her employer. "Proof of a defendant's recent possession of stolen property, standing alone, does not shift the burden of proof to the defendant. That burden remains on the State to demonstrate defendant's guilt beyond a reasonable doubt." *Maines*, 301 N.C. at 674, 273 S.E.2d at 293 (citation omitted).

At the time of the breaking and entering, McDaniel was working for Nichols by collecting items for transportation to the scrapyard. The two often worked at 50 Woody Street searching for items in and around the house to sell to the scrapyard and frequently used McDaniel's truck to transport the items. McDaniel testified at trial that while at the home located at 50 Woody Street, Nichols asked her to load the property at issue onto her truck, drive it down the hill, and unload it outside his residence because he was storing it for a friend. McDaniel had no knowledge the property was stolen. Taking the evidence in the light most favorable to the State, the State only showed McDaniel briefly possessed the stolen property up to two weeks after the breaking and entering occurred. McDaniel's conviction therefore rested only upon her brief possession of the stolen property that she was instructed to transport for another, specifically her employer Nichols.

This Court has warned that "[t]he applicability of the doctrine of the inference of guilt derived from the recent possession of stolen goods depends upon the circumstance and character of the possession." *State v. Weinstein*, 224 N.C. 645, 650, 31 S.E.2d 920, 924 (1944). Although McDaniel admitted to temporarily possessing the stolen property, the possession was under a unique circumstance and character due to McDaniel's employment status. "It is not sufficient to charge [the stolen property] to be the property of one who is a mere servant, although he may have had actual possession at the time of the larceny." *State v. Greene*, 289 N.C. 578, 584, 223 S.E.2d 365, 369 (1976) (quoting *State v. Jenkins*, 78 N.C. 478, 479 (1878)); *see also State v. Campbell*, 810 S.E.2d 803, 819 (N.C. Ct. App. 2018) ("[A]n employee in possession of property on behalf of the employer does not have a sufficient ownership interest in the property."). It is essential to understand the legal implications of the fact that McDaniel was an employee of Nichols', and that she was acting under his direction when she transported the property.[1] Here, because McDaniel was a mere employee of Nichols' and acting under his directive when she transported the property, her possession was not that of herself but of her employer. *See Greene*, 289 N.C. at 584, 223 S.E.2d at 369 ("his possession is the possession of his master.") (quoting *Jenkins*, 78 N.C. at 479).

---

[1] Similarly, a pawn shop owner is not guilty of larceny through the doctrine of recent possession if she has possession of stolen goods that were pawned. Instead, the State places regulations on pawn shop owners "to prevent unlawful property transactions [ ] in stolen property." N.C.G.S. § 66-386(1) (2012).

In addition to possessing stolen property, the second element of the doctrine requires that the defendant have "the power and *intent* to control the goods." *Maines*, 301 N.C. at 674, 273 S.E.2d at 293 (citations omitted) (emphasis added). Contrary to the majority's view, McDaniel lacked the intent to control the stolen property. Instead, evidence showed that subsequent to Nichols' orders, McDaniel transported the items from 50 Woody street to 24 Ridge Street, a house a short distance away. Proof of McDaniel's lack of intent to possess the property was present after she unloaded the property because she failed to return to the residence to take possession and control of the items. Evidence further showed that McDaniel had no affiliation to the residence where she unloaded the property and was not present when the items were discovered. The State failed to offer any evidence to contradict McDaniel's version of events and McDaniel never gave conflicting stories concerning the property to law enforcement. *Cf. State v. May*, 292 N.C. 644, 659–60, 235 S.E.2d 178, 188 (1977) (judgment of nonsuit properly denied where "[t]he State's evidence is sufficient to contradict and rebut defendant's exculpatory statement, and casts great doubt upon the credibility of defendant's statement.").

The majority today holds that in this case, defendant's recent possession of stolen property *alone* is sufficient to support a conviction for breaking and entering and larceny after breaking and entering. However, "[p]roof of a defendant's recent possession of stolen property, standing alone, does not shift the burden of proof to the defendant." *Maines* at 674, 273 S.E.2d at 293. Because the State failed to come

forward with substantial evidence that McDaniel had exclusive possession over the stolen property with the power and intent to control the items, the Court of Appeals' decision should be affirmed.